NEW-YORK,
October, 1811.

BEALS
v.
GUERNSEY.

BEALS *against* GUERNSEY.

*It seems,* that evidence of what a witness, since deceased, swore at a former trial, between the same parties, is not admissible, unless accompanied with the *postea* or *record* of the former suit.

Though a purchaser of goods *knows* of a judgment against the vendor, at the time of the sale, that fact will not, of itself, render the sale fraudulent or void; but if he knows of the judgment, and purchases with the view and for the purpose of defeating the creditor's execution, it is fraudulent, and the sale is void, notwithstanding a full price has been paid by the purchaser.

The sale must be *bona fide*, as well as for a good consideration.

The *non delivery* of the goods to the vendee, at the time of sale, is only *prima facie* evidence of fraud, and may be explained by circumstances.

An execution does not bind the goods of the debtor till delivered to the sheriff.

THIS was an action of *trespass*, brought to recover the value of 73 barrels of *whiskey*. The cause was tried, at the *Ontario* circuit, before Mr. Justice *Yates*, on the 27th *June*, 1811.

A witness testified, that on the 18th *July*, 1807, he sold to *Moses Johnson* 95 barrels of *whiskey*, at 56 cents per gallon, which was endorsed on a bond given by the witness to M. *Johnson*, payable in *whiskey*. Seventy-three barrels of the *whiskey* were put in the store of *Ezekiel Taylor*, in the village of *Canadaquai*. *Johnson* was then a prisoner, *within the liberties of the prison*, having been surrendered by his bail, and notoriously a bankrupt.

The defendant, as sheriff of the county of *Ontario*, on the second *Monday* of *November*, 1807, sold the whiskey in the store of *Taylor*, by virtue of a *test. fi. fa.* issued against *Johnson*, on a judgment obtained against him, on the 12th *November*, 1805, at the suit of *William W. Rodman*. The execution was returnable on the second *Monday* of *November*, and was delivered to the sheriff, on the 18th *September*, 1807. At the time, and before the sale, the plaintiff, who was present, gave notice that the whiskey was his property, and forbade the defendant to sell it.

The plaintiff gave in evidence a bill of parcels of 95 barrels of whiskey sold to him by *Moses Johnson*, dated *August* 28, 1807, at 50 cents per gallon, amounting to 1,964 dollars, on which was endorsed a receipt of payment, by a note of hand, in full.

From the testimony, it appeared that the plaintiff and several others, became bail for M. *Johnson*, for the liber-

In actions of *trespass*, for taking the goods of the plaintiff, as well as in *trover*, the jury, in their discretion, may allow, besides the value of the goods at the time of the *trespass*, interest on the amount from that time to the judgment, by way of damages.

ties of the gaol, and that *Johnson* delivered sundry
bonds and notes to them for their indemnity, among
which was the bond on which the whiskey was endorsed
in part payment, and that the whiskey, when purchased,
was delivered to *N. Gorham*, one of the bail, for their in-
demnity. On the 28th *August*, 1807, *Gorham* and an-
other offered to purchase the whiskey, and *Johnson* said
he wished to sell it, to prevent its being taken in execu-
tion at the suit of *Rodman*, and his thereby gaining a
preference over other creditors. *Johnson* wished to
get a better price than was offered; but on the same day,
sold it to the plaintiff, and deposited his note taken in
payment, in the hands of Mr. *Greig*, as security for his
bail. *Gorham*, on being informed that the note was in
the hands of *Greig*, directed *Taylor*, with whom the
whiskey was stored, to deliver it to the plaintiff when-
ever he wished to take it, as he had purchased it of *John-
son;* and the plaintiff called at *Taylor's* store to receive
the whiskey; but on account of the sickness of *Taylor*,
it was not then actually delivered.

It was testified that *Greig* had in his possession, in the
autumn of 1807, a note dated the 28th *August*, 1807,
signed by the plaintiff, for 1,964 dollars, payable in good
whiskey, at 50 cents per gallon, on the 1st *September*,
1808; but whether it was the same note mentioned in
*Johnson's* receipt, endorsed on the bill of parcels, the
witness could not say, except from report.

It appeared that the defendant had given due notice to
the plaintiff to produce the note, given by the plaintiff to
*M. Johnson* for the whiskey, in evidence, at the trial of
the cause.

The defendant proved that the judgment on which the
execution issued was for twenty thousand dollars, on a
warrant of attorney, given to secure the creditors of the
defendant named in the condition of the bond, for debts
*bona fide* due to them from *Johnson*. The plaintiff,
then, offered to prove that this action was tried at the

NEW-YORK,
October, 1811.

BEALS
v.
GUERNSEY.

NEW-YORK,
October, 1811.

BEALS
v
GUERNSEY.

preceding circuit, when one *Tiffany* was sworn as a witness in the cause, but was since dead; and that he testified that he was present when *Johnson* sold the whiskey to the plaintiff, and that the sale was *bona fide.* The defendant's counsel objected to the evidence, unless the plaintiff also produced the *nisi prius record and postea* of the trial. But the judge overruled the objection, and admitted the evidence.

The jury, under the direction of the judge, found a verdict for the plaintiff, for 1,952 dollars and 91 cents, which sum included the value of the whiskey, at the time it was sold by the defendant, and also 413 dollars and 16 cents for the *interest,* from the time of the sale, to *August* term last; and it was agreed, that if the court should be of opinion that that sum allowed as damages, by way of interest, ought not to have been allowed, it should be deducted from the amount, unless a new trial should be granted, for some other cause.

A motion was made to set aside the verdict, and for a new trial; 1. Because the sale of the whiskey by *M. Johnson* to the plaintiff was fraudulent, as against creditors; 2. Because improper evidence was admitted.

*Cady,* for the defendant. 1. By the 2d section of the statute (sess. 10. c. 44.) for the prevention of frauds, all conveyances, sales, &c. made with intent to hinder, delay or defraud creditors, are declared void. It was enough for the defendant to prove that the intention of *Johnson* was fraudulent. He was not bound to prove further that the plaintiff knew that it was fraudulent. It was for the plaintiff to avail himself of the *sixth* section of the act, and show that he was a *bona fide* purchaser, upon a good consideration, and without notice of the fraud. Whether a deed of sale is fraudulent, or not, in regard to creditors, depends on the motives of the party making it.*

* 8 *Term Rep.* 530. *Le Blanc,* J. *Shep. Touch.* 67.

It was clearly proved, that *Johnson* declared that he

sold the whiskey to defeat his creditors. And what evidence does the plaintiff produce that he was a *bona fide* purchaser, without notice ? Nothing but the receipt of *Johnson* himself for a note, which ought to have been produced at the trial, or the payment of it fully proved. A sale by the debtor, pending a suit against him, is always considered a badge of fraud. But a conveyance of the defendant's goods, after a judgment against him, is held to be a much deeper complexion of fraud.* And if the purchaser has knowledge, in fact, of the judgment against the vendor, the sale has been held void, under the statute of 13 *Eliz.* from which the second section of our act is copied, notwithstanding a full price has been paid.

Whatever is sufficient to put a party on inquiry, is a constructive notice.† The plaintiff knew of the suits against *Johnson*, and that he was a bankrupt. The plaintiff himself was *bail* for the liberties. He must be charged with knowledge of the judgment in favour of *Rodman*, as he knew all the facts which necessarily led to that result. To render the sale valid, it should be shown that the plaintiff had no manner of notice of the judgment. But the plaintiff, when he made the purchase, was bound to make inquiry, as to the judgment.‡ Acts of doubtful complexion are construed to be within the general rule, for the sake of preventing fraud.

Again, it is to be observed, that the sale to the plaintiff was not for the purpose of raising money to satisfy a creditor, nor in the ordinary course of trade. It was on a credit of 13 months, and for a note payable, not in money, but in *whiskey*, at the same price. In order to determine whether a sale is fraudulent or not, within the statute, it is material to inquire into the value of the property, and the value and tangibility of that substituted in its place.§

2. In *Patton* v. *Walter*,¶ it was held that though the *postea* was no evidence of the verdict, without showing

NEW-YORK, October, 1811.

BEALS v. GUERNSEY.

* *Rob on Fraud. Conv* 578. *Doug.* 88.

† 1 *Johns. Cas.* 53.

‡ *Rob. on Fraud. Conv.* 406. *Cowp.* 432.

§ 6 *East*, 257.

¶ 1 *Stra.* 162. *Peake's Ev.* (3d *edit.*) 59.

the final judgment, yet it was evidence of a trial, so as to introduce an account of what a witness swore, at the trial, who was since dead. According to the rule of evidence, recognised by this decision, the evidence of what the witness swore at the former trial, was inadmissible, unless accompanied with the *postea.*

*E. Williams,* contra. The question, as to the plaintiff's knowledge of the motives or intention of *Johnson,* was left to the jury. If the fraud was not brought home to the plaintiff, he is not to be affected by it. Fraud is never presumed. The jury, by their verdict, have found that there was no fraud. A judgment does not bind personal property, and the execution was not issued, until some time after the sale.

Admitting the note taken in payment was for whiskey, deliverable at a future day, it was something equally valuable and tangible as the whiskey sold. It might, at a future day, be much more valuable.

Again, a bond payable in *whiskey* was delivered to *Gorham,* for the security of the bail of *Johnson,* who was a trustee of the *whiskey* for their benefit. The equitable title was in the bail of the plaintiff.

*Johnson* was a *nominal* owner. The whiskey was delivered to *Gorham,* who had the agency relative to it, and who gave directions for its delivery to the plaintiff, who would have taken it immediately into his possession, had it not been for the illness of *Taylor,* in whose store it was deposited. It was not in the possession of *Johnson,* at the time of the delivery of the execution to the sheriff.

*Per Curiam.* The two principal points, in this case, are, 1. Whether the sale of the whiskey to the plaintiff, was, under the circumstances of the case, fraudulent; and, 2. Whether the testimony of what was sworn by *Tiffany,* upon the former trial, was admissible.

The better opinion seems to be, that if the testimony of what a witness swore at a former trial, be unaccompanied with the *postea* or record of the former suit, and that be made an objection, at the time, to the admission of such testimony, the objection is good. It was so ruled in 2 *Show.* 168. *Anon.;* and other cases admit the existence of the rule. (1 *Stra.* 162. *Peake's Ev.* 40.) But the question here is, whether even, independent of that testimony, the plaintiff would not have been entitled to recover.

When the plaintiff bought the whiskey, there was a judgment against *Johnson*, of two years' standing, and he was also under arrest, and upon the liberties of the gaol and a reputed bankrupt. But the execution in this case was not issued and delivered to the sheriff, until some time after the sale, and there was no evidence to bring home to the knowledge of the plaintiff the existence of the judgment in favour of *Rodman*. There were no circumstances to warrant the inference that the plaintiff knew of that judgment, and purchased the whiskey with an intent to defeat the execution upon it. As the judgment was nearly two years old, the plaintiff cannot well be supposed (admitting he knew of such a judgment) to have purchased, for the purpose of defeating that creditor, for what ground had he to presume any immediate execution, considering the delay that had already taken place since the date of the judgment? The circumstance of the non-delivery of the property is sufficiently accounted for, by the sickness of *Taylor*, in whose store it was deposited, and it was there not in the custody of *Johnson*, but of *Gorham*, one of the bail to the sheriff, for the liberties granted to *Johnson*. If this purchase be fraudulent and void, there would be no safety in dealing, in personal property, with a man against whom there was a judgment. The old cases, before the statute of frauds of 29 *Car.* II. have said, that if a man, after judgment, and to defraud execution, sell his goods

for a valuable consideration, and the buyer knew of the judgment, the sale is void under the 13 *Eliz.* c. 5. (*Dalison's Rep.* 79.) But the modern doctrine is not merely that the purchaser must know of the judgment. That fact will not, of itself, defeat a *bona fide* sale, or make it, in judgment of law, fraudulent. If that was the rule of law, it would put a most inconvenient check to the circulation of personal property. The rule is, that the purchaser, knowing of the judgment, must purchase, with the view and purpose to defeat the creditor's execution; and if he does it with that purpose, it is iniquitous and fraudulent, notwithstanding he may give a full price. The question of fraud depends upon the motive. The purchase must be *bona fide*, as well as upon good consideration. This was the rule as declared by Lord *Mansfield*, upon repeated occasions. (4 *Burr.* 474, 475. *Cowp.* 434.) The non-delivery of the goods, at the time of the sale is, of itself, a circumstance of fraud, as was stated in *Twyne's* case; (3 *Co.* 80. b.) but it is only *primâ facie* evidence of fraud, and the circumstance may admit of explanation. (10 *Ves.* 145. 2 *Bos. & Pull.* 59.) Here it is fully explained. The statute of frauds on this point, and which we have adopted, (*Laws*, vol. 1. 389.) says, that the execution shall not bind goods, but from the delivery, and this provision was made for the benefit of purchasers. In one case Lord *Hardwicke* held that a sale of goods might be valid, even after delivery of the execution, and until execution executed. (*Lowthal* v. *Tompkins*, 2 *Eq. Cas. Abr.* 381.)

As here was not evidence to warrant the inference, that the purchase by the plaintiff was made with intent to defeat the execution of *Rodman*, and, especially, as there was no evidence that the plaintiff even knew of that judgment, the verdict was correct, and the charge of the judge well founded.

The *interest* which was allowed, by way of damages, was just. The plaintiff ought not to be deprived of his property, for years, without compensation for the loss of

the use of it, and the jury had a discretion to allow interest in this case, as damages. It has been allowed in actions of *trover*, and the same rule applies in trespass when brought for the recovery of property. The motion on the part of the defendant must be denied.