*362 Drake, Justice. In the cases of Scudder and Coryell, decided in May term, 1829, no reasons were filed, but there were no objections on this ground. ,
Ford, Justice. It has not been the practice to file reasons, or make a state of the case, and the reasons may be, that the affidavits on which the applications are made, are taken on notice, and disclose the ground of the application. Let the argument proceed.
Saxton. There were five executions issued against Henry *305] * Warne. The two first were out of the question; and the dispute was between John Warne’s execution, No, 3, and Matthews’ execution No. 4.
Certain of the property sold by the sheriff, was property not inventoried, and not bound by John Warne’s execution ;. and a certain part óf the property was not acquired by 'the defendant until since Warne’s execution was levied, and therefore cpuld not be bound, but must go to satisfy Matthews’ execution.
Some of the articles were not levied upon by J. Warne’sexecution, and we are of course entitled to those, as our execution was a subsisting one at the time of the sale. Goods not inventoried are not bound by the execution, ■'Coxe Rep. 136, 169. There was grain in the ground which was sowed after the levy on John Warne’s execution,, and which was sold by the sheriff, and also a colt.
There is another set of articles, of the same name as the-articles levied upon by John Warne’s execution ; yet they are not the same articles, but articles subsequently obtained ;. the articles mentioned in Warne’s inventory having been sold, and these obtained since, viz. 13 calf skins, 40 cow hides, 2 setts of single harness, &c., amounting to $147.60 cts.
• The sheriff never acquired a possession of the property under John Warne’s execution ; he never saw the property ; he merely received a list of the property from the plaintiff, which the plaintiff received from the defendant, and then *363 the plaintiff gave a stay of execution. This was not such a levy as would enable the plaintiff to maintain trover. 1 Halst. 141, 2; 12 John. Rep. 406, 7; 3 Wash. Cir. Ct. Rep. 66; 16 John. Rep. 288.
Again, this execution of John Warne’s was levied and kept on foot by collusion with his son, Henry Warne, to protect the property of Henry, and prevent Matthews from recovering the money, and it comes within the statute of frauds, 1 Bur. Rep. 174; Cowp. Rep. 434; 8 John. Rep. 452.
If a creditor permit the debtor to consume the property, this is a'circumstance of fraud, 15 John. Rep. 429, Farrington v. Smith and Sinclair ; 14 John. Sands v. Hildreth.
Warne’s execution had become dormant as to subsequent execution creditors. Where the plaintiff permits the execution to sleep *a long time, as for eighteen months, it [*306 is sufficient to postpone it. 4 Dyll. 249; 4 East. 251; 1 Ld. Ray. 252.
If an execution creditor seize goods on execution and suffer them to remain in the hands of the debtor, it is void as against a subsequent execution creditor. 15 John. Rep. 429; 2 John. 420; 3 Bacon, Fraud A; 7 Mod. 37; 1 Wils. Rep. 144; 17 John. 274.
Vroom answered. The sheriff has not got the money ; he has actually paid it over. How then can the sheriff get it back ? Although the court may have control over the money, while it is in the hands of the sheriff, yet after he has paid it over, the court cannot enable the sheriff, or order him to get it back; nor can he bring any action for it.
John Warne’s debt is admitted to be just, and the judgment good; and his first execution good. It is not pretended that they were fraudulent. There was no fraud in the inception of this transaction. It is difficult to say when it commenced. The alias fi. fa. was not sued out until after Matthews’ action was commenced.
The first objection is, “ that some articles'mentioned in the inventory to Matthew’s execution, are not contained in the *364 inventory to Warne’s execution.” In the inventory to our execution, there is a particular levy on a number of articles, concluding with the words “ and also all other goods o.nd chattels.” If the sheriff-had merely said “I have levied upon all the goods and chattels without specifying anything, it would not have been a good levy, and the sheriff could not have sold upon it.
Second. It is said that there are articles of the same kind and nature, but that they are not identically the same levied upon. The facts here are not sufficiently made out ás to all the articles. If a property of this kind cannot be sold or is to be appropriated to the second execution, then the law as laid down by this court, that the sheriff may make the defendant his bailiff, and leave the property with him, will be productive of more mischief than benefit. Third. It is said that they levy is insufficient. The term levy, originally meant to seize or take hold of, but that is not the meaning of the term at this day. The sheriff may call upon the defendant, and if he is willing a give a fair inventory this is sufficient; and if defendant does do it, *307] there is a possession by the sheriff: There *would be more possession if the sheriff had seen the goods; and if the defendant had sold the property to a bona fide purchaser, the sheriff might maintain trover.
Again, it is said that there was here an intention to defraud, and that in such case, the junior execution must be preferred, as a general principle. This principle has been carried to very great lengths in some courts of other states, but it has never been carried so far here.
Fourth. As to the stay'of execution given, it is said this is a badge of fraud. John Warne in this did no more than is customary in the whole state of New Jersey.
Opinion of Fobx>, J.
This was a rule taken by Jeremiah Matthews to shew cause why certain moneys in the hands of the sheriff on execution, should not be appropriated to-the satisfaction of his, which was the youngest process.
*365 John Stiers obtained a judgment in the Supreme Court for $534.71, the 13th August, 1823, against one Henry Warne, and two days afterward put a fi. fa. thereon in the hands of the sheriff, it being the oldest execution.
John Warne obtained judgment in the Supreme Court for $1,704, the 13th August, 1823, against the same Henry Warne, and put a fi. fa. thereon in the hands of the sheriff the 11th May, 1824, it being subsequent to that of Stiers.
By virtue of these executions the sheriff sold sufficient goods of the debtor to satisfy the prior execution of Stiers, so that no further notice need be taken of it in the present case. But as all the goods and chattels levied on were exhausted in satisfying this execution, and that of John Warne was still unpaid, he sued out an alias fi. fa. the 26th July, 1826, and had it levied on other goods and chattels of Henry Warne the debtor. The sheriff neither went with this execution to the premises nor made an actual seizure, but remaining at home received of the debtor a very particular inventory in writing, under the debtor’s hand, of his goods and chattels, and returned it as an inventory of what was levied on; he also received directions from the plaintiff to stay till further orders from himself, and that he, the sheriff, should not be held accountable *for the goods. [*308 The sheriff under this direction taking no security for the property, it remained in the hands of the debtor for six months, until Jeremiah Matthews obtained against him the judgment and execution hereafter mentioned. During this interval the debtor used all the property as if no execution had been levied upon it. He consumed the provisions mentioned in the inventory; gathered in and made use of the growing crops; sold the horses; fatted, killed and disposed of the cattle, sheep and hogs; the green hides in the tan yard he laid in the vats and converting them into leather, sold it and purchased new hides as usual; the leather specified in the inventory he made up into harness and sold it; he made new sets of harness as usual, and put new crops of grain in the ground.
*366 Jeremiah Matthews obtained judgment in the Common Pleas of Hunterdon, for $1,068.42, the 8th of February, 1827, against the same Henry Warne, and the same day delivered a fi. fa. thereon to the sheriff. The inventory to this was a true copy of that which had been previously annexed to John Warne’s execution, only the sheriff added “ subject to the prior executionexcepting only a few additional articles, which he seized under the last writ and which produced at the sale hereafter mentioned, only $2.71. The direction of- Matthews to the sheriff, being to effect a sale without the least unnecessary delay, the property was- sold at vendue, the 26th March, 1827, for the total amount of $765.31. Before the happening of this sale, to wit, 1 Feb., 1827, John Warne, the plaintiff in the prior execution, and father of the defendant therein, died; but his son Samuel Warne, his administrator attended, and all the goods and •chattels were struck off to him and his brother John. These they left in the hands of Henry Warne, the debtor, who is their brother, who still uses them apparently as his own. Matthews gave notice to the sheriff, that he claimed the amount of sales on his execution, though the youngest, .and forbid the sheriff to pay it on the elder execution. The sheriff accordingly has not paid it over, but the administrator of John Warne has given him a receipt in full against the elder execution.
Though Matthews’ was an execution in the Common Pleas, he came the very next term after the sale, into this court, out of which the prior executions issued, and obtained a rule to shew cause why the proceeds of the goods and chattels should *309] not be *applied to satisfy his execution, upon the ground that the elder one was only a fraudulent cover of the defendant’s goods to delay and defeat other creditors.
First. It appears that many of the goods mentioned in the inventory had been acquired by the debtor after the return of the elder exeeution, and consequently were not returned-in the first inventory. Thus the crops growing at *367 -the return of the elder execution in July, 1826, could not be those that were growing in February, 1827, for they were not put into the ground till after the return of the prior execution. So the green cow hides and calf skins of July, 1826, were under a process of tanning in the vats, and ■could not possibly be the hides and skins that were green in February, 1827, the latter having been purchased since the return of the elder writ. Such likewise was the case of the black colt. These articles to the amount of $183.63 were not the debtor’s property till after the levy and return of the prior execution. An execution cannot be levied after the return is out. The utmost length of time that the law allows for executing a writ, is the day whereon it is return.able. Tidd’s Pr. 385; 1 Arch. Pr. 79; 1 Salk. 71, 322. 'The sheriff has no power over any goods but such as he levied his execution upon. Wintermute v. Hankinson, 1 Hoist. 149 ; Hotchkiss v. McVicker, 12 John. 403; Slingerland v. Swart, 13 John. 255. Having seized sufficient property, in his opinion, to satisfy the debt, such levy must be the limitation of his power, or the debtor could have no use of his other goods. In case of the first seizure proving' insufficient, the creditor may sue out an alias or fi. fa. for the residue, by virtue of which the sheriff may levy on more goods, which is evidence enough of his inability to do it by virtue of his old writ after its return was out. Otherwise a fi. fa. for the residue, though well known at the common law, would be without any distinct office or object, and being an expense without utility might bo entirely abolished. But the law is clearly otherwise, and therefore those goods to the amount of $183.63, acquired by the debtor after the return of the prior execution, were levied upon only by the younger fi. fa. and must be applied exclusively to it.
But the younger execution claims priority of satisfaction ■out of the goods really seized on the elder one, upon an allegation that it was fraudulent. What particular acts are evidence of an execution *being sued out and kept on [*310 *368 foot with a covinous intent to delay and defeat other creditors, seems not to be precisely settled; and though elder-executions have been frequently postponed on that account, the circumstance have hardly ever been precisely the same. In Bacc. Ab. Fraud, A. the law is stated to be as -follows r “ A man has a judgment for a just debt against A, and takes out a fi. fa. and gets the sheriff to seize the goods, but would not let him proceed further, but suffered the goods to remain in the hands of A, the debtor; B, who has also a judgment for a just debt against A, takes out a fi. fa.; and the question was whether he could seize upon the same goods; and it was held by the court that he might; for the former was a fraudulent execution.” In support of this decision he cites a number of adjudged cases to the same effect. In the case of Smalcomb v. Cross, 1 Ld. Bay, 251, an execution was delivered to the sheriff; but no warrant was taken to-levy the goods, and the court adjudged it to be a design to keep the execution in his pocket, to protect the debtor’s goods by fraud, and they postponed it for that reason to a younger execution. So in the case of Bradley v. Windham, 1 Wils. 44, the plaintiff gave an execution to the sheriff, but told him to use the defendant kindly, and not take away any of his goods, whereupon the sheriff’s bailiff only rode round the grounds and said, “ I seize all this corn and cattle;” and a jury found, from these facts that there was no intent to-have thefi. fa. executed, and it was postponed to a younger execution. . In Tidd’s JPr. 919, the author after collecting all the cases on this point, deduces the rule of law from, them as follows : “ If a creditor by a fi. fa. seize the goods of a debtor, and suffer them to remain long in the debtor’s hands, it has been determined often that this is evidence off fraud; and that the goods remain liable to any other execution.” It is useless to cite further cases in proof that an execution kept on foot without an intent to have it executed^ may be postponed to a younger on.e on common law principles. The law is so. understood in some of the most respectable- *369 courts in our sister states. See 2 John. 422; 8 John. 452; 11 John. 112; 12 John. 406; 14 John. 500; 15 John. 428 ; 16 John. 287; 17 John. 274. The U. S. v. Conyngham, in the Circuit Court of the U. S. 4 Dal. 359. Cases decided in Pennsylvania, admit this to be the common law, though they have decided otherwise according to what was at one time supposed to be their peculiar custom. 4 Dal. 167, 208, 213.
*But perceiving the increase of many evils under [*311 this innovation they went back to the path of the common law in respect of all goods and chattels, except household furniture, which according to 4 Dal. 213, may still be protected under an elder execution for the enjoyment of the debtor, and out of humanity, it would' seem, to him, to the exclusion of all humanity for the sufferings of a more needy creditor. Considering how wear and tear, breaking, bruising, soiling and change of fashion, lessen the value of household furniture, one would suppose it the kind of goods less entitled than any other to be made an exception, and that it serves to shew the superior wisdom of the common law. So it is said that the practice in this state has been different from the common law. I will not undertake to decide in this cause what length of time an execution may be delayed without becoming evidence of fraud, or whether it depends at all on length of time; but I say there never was a practice, founded on any decision, in this state, by which, under cover of a friendly execution, a debtor could exercise full dominion, without accountability, over all the provisions of his store, the furniture of his house, the crops and stock of his farm, the capital stock of a large tannery, and of a shop for manufacturing leather into saddlery and harness; who might kill beeves, sheep and hogs, consume the way going crops of his farm, sell the horses, cattle and stock of a large farm, tannery and factory, and put the money in his pocket; while every younger execution is put to defiance. It is quite possible that goods may have been used and sold by the debtor, under cover of the older credi *370 tor’s execution, to the amount of it, and this attempt at covering the residue of the goods under that same fi. fa. is an evident fraud on the younger execution. In this way a debtor might sell the whole of his property, and if the prior execution still remained valid, it would be a bar to all other creditors forever. It would delay and defeat creditors-by securing to a debtor the enjoyment of property in opposition to all the process of courts of justice.
This court has power of deciding on both law and fact on. a rule to shew cause, though it may order a feigned issue at its discretion. This course was not applied for by either party, and in mercy to both, ought not to have been granted in so plain a case. Although the younger judgment and execution are of the Court of Common Pleas, the creditor *312] has a right to come here from whence *the prior execution issued, and where the sheriff has been ordered to bring the money. I am clearly of opinion, it cannot be holden on our process, and that it belongs to the execution of Matthews in preference to that of Warne. If, therefore, the money be in court, let it be paid in satisfaction of the Mátthews execution; and if it be not, let Matthews resort to legal means for calling it out of the hands of the sheriff.
Opinion of Drake, J.
Erorn the state of the case laid before us on this application, it not only appears that the sheriff, upon the receipt of Matthews’ fi. fa., copied the inventory before taken- upon Warne’s writ, but also, that afterwards, and before the return of the writ, he went to the house of the defendant and made a new list of the property, that included some other articles not before inventoried, and took security for the delivery of the goods, and afterwards indorsed the list of articles thus levied on, on Matthews’ execution. Whereas the levy, if it may be so called, by virtue of the writ in favor of John Warne, was made merely by receiving from him a list of the property of the defendant on which he *371 wished the levy to be made, and the sheriff made the levy from the said list without going to see or take charge of the property, or doing any other act to perfect his levy. And it also appears, that John Warne, the plaintiff in the first execution, lived in the neighborhood of his son, the defendant, and was in habits of frequent intercourse with him ; from which, as well as the directions given by him to the sheriff, he may justly he considered as knowing and consenting to his son’s conduct with respect to the property levied on.
By mentioning these circumstances, I do not mean to intimate, that, upon the question of fraud, the case, as presented by Justice Ford, is not sufficiently strong to justify the postponement of the first execution. But concurring, as I do, with him, in the postponement, and also in doi.tg it, under all the circumstances of this ease, without a reference of the question of fraud to a jury, I have thought proper, from this last consideration, to notice these additional facts.
The Chief Justice having been once concerned as counsel, gave no opinion in this case.