# CASES

# SUPREME COURT

## STATE OF NEW-YORK,

---

## VAN RENSSELAER'S EXECUTORS *vs.* JEWETT.

In covenant for non-payment of rent on a lease reserving a certain number of bushels of wheat and a number of fowls annually, the plaintiff is entitled as matter of law to interest on the value of the property after the time when, by the terms of the lease, it should have been delivered.

COVENANT for rent on a lease in fee, dated 8th December, 1813, executed by Stephen Van Rensselaer, since deceased, to William Davis, for $188\frac{3}{10}$ acres of land in Guilderland, tried at the Albany circuit in October, 1844, before PARKER, Cir. J. The lease was produced and proved. It reserved "the yearly rent of eighteen bushels and three-fourths of a bushel of good, clean, merchantable, winter wheat, and four fat hens, to be delivered at the now mansion house of the said Stephen Van Rensselaer, in the town of Watervliet, unless specially directed by the said Stephen Van Rensselaer, his heirs, executors or assigns, to be delivered at some other place, not more than one mile distant from the said mansion house, or the spot on which it is now erected, and perform one day's service with carriage

[. 35]

and horses, the first payment to be made on the first day of February next, and thereafter in and upon the said first day of February in each year." The lease contained a covenant by the lessee for himself, his heirs, &c. and assigns, to pay said rent " at the days and times and in manner aforesaid." It was proved that the lessor died on the 20th January, 1839, having made his will appointing the plaintiffs executors, &c.; and letters testamentary had been granted to them. In 1834, eighty-four and eight-tenths acres—parcel of the premises—were assigned to the defendant.

The plaintiffs proved that the amount of rent on the part of the premises assigned to the defendant, for the years 1835, 6, 7, and 8, amounted, with interest, to $82,18, the rent of said part being estimated, not according to the proportionate value of such part, but in the proportion which the number of acres therein bore to the whole piece leased. The witness who estimated the rent and computed the amount due, also stated "that the value of each item of rent was different in each of the years 35, 36, 37 and 38, and that he had allowed and included in said amount interest on each item of rent from about one or two months after the time it fell due to the trial." The defendant objected to the proof of, and the allowance of interest. The judge overruled the objection, holding that the plaintiffs were entitled to recover interest on all the items of rent, and he so instructed the jury. The defendant excepted. Verdict for the plaintiff for $82,18. The defendant moves for a new trial on a bill of exceptions.

*R. W. Peckham*, for the defendant.

*D. McMartin & C. M. Jenkins*, for the plaintiffs.

*By the Court*, WHITTLESEY, J. The question presented in this case is important in determining the amount of damages upon a vast number of contracts similar to that now under consideration. In the indenture upon which this action is brought, the lessee covenanted to pay or deliver a specific number of bushels of wheat, other articles of personal prop

Van Rensselaer's Executors *v*. Jewett.

erty, on a specified day, at a fixed place, as rent of the prem-
ises occupied by him.  He neglected to pay or deliver the
wheat and the other articles according to his covenant—in
other words, he neglected to pay his rent at the time, place,
and in the manner in which he had covenanted to do it ; and
the question presented for adjudication is whether he is legally
chargeable with interest, upon the value of the wheat and other
property, after the default.

Upon the question of interest generally, there are many and
conflicting decisions in the English courts, and in the courts of
the different states of the Union.   It will neither be necessary
nor profitable on this occasion to refer to or collate this
mass of scattered, and to some extent, irreconcilable authori-
ties.   This has been recently done with great industry and
ability on the part of both counsel and judges, in a case invol-
ving a question of interest, which was elaborately examined in
both the supreme court and the court for the correction of er-
rors.   In *Reid* v. *The Rensselaer Glass Factory*, (3 *Cowen*,
393,) in the supreme court, and the same case in the court for
the correction of errors, (5 *id*. 587,) the whole doctrine touch-
ing the allowance of interest, in almost every conceivable case,
was thoroughly discussed and considered ; and all the previ-
ous adjudications relating to the subject were passed in review
with appropriate commentaries and criticisms.   We desire
not to multiply references to decided cases, but rather, if it is
possible, to seize the principle which governs or pervades these
decisions, and to apply it to the particular state of facts under
consideration.   Unfortunately, in the present instance, this is
not easy, and perhaps it is not possible to do it in any satis-
factory manner.

It is difficult, and I may say impossible to extract from the
cases which it has been found necessary to examine, the prin-
ciple which has governed the courts in the allowance of interest.
At least there is no principle which can be adopted which will
reconcile them all.   *Spencer*, senator, in *Reid* v. *The Rensse-
laer Glass Factory*, supposes that in England all interest was
unlawful and forbidden prior to the statute 37 *Henry* 8, *ch*. 9,

which, while it does not affirmatively allow, much less require, payment of interest, forbids the taking of more than ten per cent. The principle supposed to result from that fact is, that while neither by common or statute law is a party required to pay interest, so it follows inevitably that one cannot in any case be liable to pay interest except in pursuance and by virtue of his own agreement. Hence he resolved the obligation to pay interest in all cases into the agreement of the parties express or implied. The principle, indeed, if sound, furnishes a clue to a great number of the cases found in the books; but if it is to be deemed so certain as to be taken as a law of construction, then it is equally clear that there are also a number of cases which are abnormal. One thing we are however able to see, that the courts have from time to time extended the allowance of interest to cases in which its allowance was not before recognized; and that the courts of this country have awarded interest in cases as to which the English courts have stopped short. I cannot however perceive that in all cases the allowance is resolvable into any actual or implied agreement between the parties; but it seems to me the rather to have been adopted in many cases as the application of a just and equitable rule of damages where a party has kept from another money or property beyond the day on which he had agreed to pay or deliver it. I think, too, I perceive a tendency to extend it to still other cases where the allowance of interest will furnish a rational and proper rule of damages, vacillating as yet between giving it to a jury as a rule which they *may* apply, and directing them as a rule which the law imposes and which the jury *must* apply.

Upon the very point now under consideration there have been two decisions in our own courts. The first case was *Van Rensselaer's Executors* v. *Platner's Administrators*, (1 *John. Rep.* 276,) decided in 1806. I give the whole case as it is found in the reports.

" This was an action of covenant for rent, and payable in wheat. The question submitted to the court was, whether interest was recoverable on the arrears of rent ? *Per Curiam.*

We are of opinion that as a general rule, interest is not recoverable in such a case; and nothing appears in this instance to hinder the application of that rule." The other case, *Lush* v. *Druse*, (4 *Wend.* 313,) was decided in 1830. That also was an action of covenant on a lease for non-payment of rent. The rent reserved was 18¼ bushels of merchantable wheat, to be delivered annually on the first day of February in each year, at such place in Albany as the lessor, his heirs or assigns should appoint. The plaintiffs on the trial claimed interest on the value of the wheat from the time it was payable. The circuit judge reserved the question, and a verdict was taken subject to the opinion of the court, and interest was to be added if the plaintiff was entitled to recover interest. The case came before the supreme court upon various questions made in it. Chief Justice Savage delivered the opinion of the court. Upon the question of interest he says : "I can see no possible objection to the allowance of interest. The value of the wheat became due on the first of February in each year, in consequence of the default of the defendant in not delivering the wheat according to contract; and interest is as much the right of the creditor after the principal becomes payable as the principal itself." It is urged by the counsel for the defendant that this last decision is a hasty one, and not well considered; that it has no reference to the previous decision the contrary way—is *obiter*, and not in harmony with the decisions of this court either before or since; and it is urged that it should not now be relied upon as sufficient to overrule the doctrine established in the prior case of *Van Rensselaer's Ex'rs* v. *Platner's Adm'rs.* The case of *Lush* v. *Druse*, which is the object of these criticisms, bears marks of thorough examination and mature deliberation. The points raised were certainly not hastily decided or ill considered. It is true, the question of interest was disposed of with brief remarks from the court; but even in this respect it bears evidence of more deliberation than characterizes the previous case. The decision was not *obiter*. The question of interest was made at the trial, and was reserved by the circuit judge; and it was stipulated that interest should be added to the ver-

dict if the court should decide that it was recoverable. The question of interest was argued before the supreme court by the plaintiff's counsel, and the right to recover it insisted upon. The defendant's counsel would seem indeed not to have argued that point, but he relied upon it as one raised at the trial and presented by the case then before the court. It was a point upon which the decision of the court was required, and as to which it was clearly and deliberately made.

It is to be regretted, indeed, that many of the decisions of our courts upon points of this character are barren of reasons to sustain them. Such is in a marked manner the case with the first decision upon this point, which the defendant's counsel would have us take as the rule. All that the court say there is, that they are of opinion that as a general rule interest is not recoverable in such a case. It was doubtless an opinion and decision announced from the bench when the point was presented, without any farther deliberation than such as occurred at the moment. The opinion thus expressed was undoubtedly in consonance with the English decisions at that day, and such doubtless would have been the judgment of the king's bench upon that very point.

The case of *Clark* v. *Barlow*, (4 *John. Rep.* 183,) which determines that interest is recoverable on rent payable in money, is equally barren of any reason for the decision. Though this case was in hostility to the English decisions, it established a doctrine which has ever since governed our own courts. All that the court say in making the decision is, " We are of opinion that in an action of covenant brought to recover a sum certain due for rent and payable in money, the plaintiff is entitled to recover the interest." Decisions are therefore not the less authoritative because the reasons therefor are not elaborated as much as would be desirable to understand the principles upon which they are based.

There is no question, I believe, but what the English authorities are opposed to the allowance of interest in such a case as the present, and upon the facts in *Lush* v. *Druse.* When an obligation was given for the payment of specific sums of money in goods at

specific times, interest was not allowed on default in payment. (*Foster* v. *Weston*, 6 *Bing.* 709.) Such is not the doctrine of our own courts in such cases. (*Pinney* v. *Gleason*, 5 *Wend.* 393.)

On the argument of *Lush* v. *Druse*, the case of *Spencer* v. *Tilden*, (5 *Cowen*, 144,) was cited by the plaintiff's counsel as an authority for the allowance of interest on contracts for the delivery of personal property after the day for delivery had elapsed and default made. In that case the obligation was to pay $360 or twelve cows and twelve calves on a day certain. The day elapsed without either being paid, and the court gave such a construction to the instrument as to make it a contract merely for the delivery of the cows and calves; and the damages allowed were the value of the cattle on the day of delivery and the interest thereon from that day. The question of interest seems indeed not to have been discussed or even considered on the argument or decision before this court; and it is perhaps not fairly a case to authorize the allowance of interest on a contract payable in personal property. But *Sellick* v. *French*, (1 *Conn. Rep.* 32,) decided in 1814, by the supreme court of errors of Connecticut, is a well considered case. One of the propositions respecting the allowance of interest is laid down as follows: "When there is a written contract to pay money or *other thing* on a day certain, and the contract is broken, then interest is allowed by way of damages for the breach, as in the case of notes and bills of exchange."

In contracts for the payment of a sum of money certain on a prescribed day, the debtor, in case of default in payment, must pay interest from the day the payment should have been made. This is because he detains from the creditor, against his will, a sum of money which he was entitled to have, and interest is the legal compensation or damage allowed for such detention. (*See Crawford* v. *Willing*, 4 *Dall.* 289.) What is there in principle to distinguish a contract for the payment of a specific amount of wheat on a day and at a place certain, from a like contract for the payment of money? If default be made in the payment of the wheat at the day and place specified, the party who was entitled to receive it is then entitled to the value

in money as its value was on that day. The debtor cannot afterwards absolve himself from the contract by tendering the wheat in *specie*, nor in any other way than by the payment of its value in money. The party who was entitled to receive the wheat cannot afterwards insist upon having the wheat in *specie*, or the value in money at any future day ; he can, after default has been made in the delivery, only have the value of the wheat in money, reckoning such value as of the day when it should have been delivered. At least such I understand to be the doctrine of the cases as collected in *Clark* v. *Pinney*, (7 *Cowen*, 681.) The legal result of the failure to deliver on the day, is that the delinquent is bound to pay and the creditor is entitled to receive the *amount of money* which was the value of the wheat on that day. The parties stand to each other on such a contract, after failure to deliver at the day, precisely as they do on a money contract after failure to pay. In either case the debtor owes so much money, and the amount he owes is not susceptible of variation ; only in one case the amount is certain, being specified in the contract, and in the other it has to be ascertained by computing the value of the property on the day fixed for the delivery. But that is certain which is capable of being made certain. There is no difficulty in ascertaining the value of the property in money, on the day and at the place of delivery, and thus ascertaining the precise amount of the debt.

As a matter of principle, equity and fair dealing, of mutual justice between party and party, it is difficult to perceive why a creditor in a money contract should be entitled to interest after default in payment, and a creditor in a wheat contract should not be entitled to interest after default in delivery, when the effect upon both classes of creditors is precisely the same. Is it the difficulty of ascertaining the value of the wheat on the day that makes the difference in principle ? If I purchase wheat now, to be paid for on the first day of February next at its value on that day, and I neglect to pay, I shall have to pay the value of the wheat on that day, with interest from the default until payment be made. I shall have to pay interest be

cause my term of credit expired on that day; and I must ascertain at my peril what the value of wheat is on that day, or the courts will find means of ascertaining it at my cost. The difficulty of ascertaining the value on the day does not, in all cases, make the contract so uncertain as to amount, as not to carry interest. Why then should it in any case? If a party in an action on a contract, for the non-delivery of personal property, is confined to the day of delivery for determining the value of the property, and cannot have interest, he is in a much worse situation than one who can bring trover; as in the latter form of action the plaintiff may have the value of the property at any time between conversion and trial, and that with interest too, if the jury choose to allow it. Thus, in one form of action, the plaintiff gets the use of the property, as he should, it being all the time equitably his, while in the other he gets neither the use in value nor the interest on the value.

But it is urged that the principle that interest cannot be recovered on unliquidated damages applies to this case. It has been decided with as much barrenness of reasons as in most of the other decisions in relation to interest, that it is not recoverable on unliquidated damages. (*Anon.* 1 *John.* 315; *Holliday* v. *Marshall*, 7 *Id.* 211.) Neither can interest be recovered on an unliquidated account for work, labor and services. (*Doyle's Adm'rs* v. *St. James' Church*, 7 *Wend.* 178.) But it is recoverable for the value of labor upon a special contract for a specific compensation *per* month. (*Still* v. *Hall*, 20 *Wend.* 51.)

The case before us hardly comes within the definition of unliquidated damages, or unliquidated accounts, so far as any definition is conveyed by the decisions in such cases. When one is sued on a *quantum meruit* for work and services, as there has been no special agreement, he does not know how much will solve the debt. The amount is quite uncertain, and it requires a judgment or verdict to render it certain. In this case the debtor knew precisely what would satisfy his covenant. He had it in his power to protect himself by delivering the requisite number of bushels of wheat at the place and on the day designated. The plaintiff's damages are not unliquidated

and uncertain, unless it is because the value of the wheat on the day of delivery was uncertain, and this we have already seen is capable of being reduced to a certainty.

There is a class of cases like that of *Dox* v. *Dey*, (3 *Wend.* 356,) which was an action of assumpsit brought for the breach of a contract for the sale and delivery of a certain specified quantity of wheat. The circuit judge instructed the jury that the plaintiffs were entitled to the value of the wheat on the day of the demand, and that they might allow interest by way of damages, if they thought proper to do so. The court by Marcy, J. say, " the judge did not direct the jury to allow interest on the sum which they should find the wheat to be worth, but in ascertaining the plaintiff's damages he observed they might, if they thought proper from the nature of the transaction, include interest as an item in making up the amount of damages. There was not, in this remark, any direction contrary to law." The defendant's counsel insist that the principle of these cases should be applied to the one before us, and that if interest is allowable at all upon this contract, it is so only in the discretion of the jury, and that it should have been submitted to them. So Spencer, senator, says, in *Reid* v. *The Rensselaer Glass Factory*, " interest is allowed also in another class of cases by juries, as a measure of damages under the advice of the court, but in their absolute discretion ; which class must be carefully distinguished from that where it is allowed by the courts, as the judgment of law." In *torts* it is left to the discretion of the jury to allow interest on the value of the property by way of damages. (*Beals* v. *Gurnsey*, 8 *John. Rep.* 446 ; *Baker* v. *Wheeler*, 8 *Wend.* 505.) In actions of assumpsit on implied or uncertain contracts, and indeed on specific contracts, as in *Dox* v. *Dey*, it *may* be so left to the discretion of the jury. But where the contract is like the lease under consideration, for the delivery of a precise quantity of wheat on a specific day and place, the difference between leaving it to the discretion of a jury to find interest from the day fixed for delivery by way of damages, and directing them that interest is due upon the value of the wheat from such day as the judgment of law, wil

soon grow to be trifling. In such certain and precise cases we want some certain, precise and fixed rule, and the reasonable and equitable rule is to allow interest in all such cases where the contract is definite and clear; where it is uncertain, or where the action is on an implied contract, it may be left to the discretion of the jury to embrace or reject interest as an item to be taken into account in making up the damages.

I have come to the conclusion that the case of *Lush* v. *Druse* was decided deliberately and after full consideration; that it lays down a rule reasonable, just and equitable in itself, and proper for general application to similar cases; that if the rule which it promulgated were less just and reasonable than it is, still, as the authority of that case has been suffered to remain unquestioned for so many years; as many may be presumed to have reposed upon the principle it sanctioned, it would be unjust and unwise now to disturb it. I am therefore of the opinion that a new trial should be denied.

BEARDSLEY, Ch. J. *dissented.* In this case the quantity of wheat and its quality and description, with the time and place of delivery, were all specified in the lease, so that in these respects the contract was specific and certain. It was equally so as to the fowls and the service. What the lessee was bound to do annually, in return for the use of the land demised, was therefore certain *in specie*, although wholly uncertain *in value*. This would depend upon the worth of wheat, hens and labor, on the first of February, in each year, and which, like the price of all vendible commodities, would be more or less variable and uncertain. This lease was made in 1813, in the midst of the late war with Great Britain, when produce and labor commanded very high prices. Since that time, prices have often fallen greatly below what they then were, as they may occasionly, have advanced even beyond war prices. Such changes furnish no reason why the just value of the property and labor, for which the lessee or his assignee might be in default in any year, should not, in such case, be recovered against him; but they show the fluctuating nature of the demand, and the entire

uncertainty *as to the amount* of money which should, in any
case, be paid, in lieu of the property and labor stipulated for by
the lease. In this action the plaintiffs claim, in money, the
value of a certain quantity of wheat, with a given number of
fowls, and a certain amount of labor, as payable in different
years, that is from 1835 to 1838, inclusive. Before the jury
could make any computation of interest, they would necessarily
have to ascertain and determine the value of the property and
labor, for which the defendant was in default in one of these
years. The same thing would be equally necessary in each of
the other years, for the valuation in one year would afford
very little if any aid for another. As there were three separate
items for valuation in each year, there must have been twelve for
the four years in question in the case. These valuations being
made by the jury, it would be their duty, under the decision
made at the trial of this cause, to add interest on the several
sums so ascertained, and find for the plaintiffs the aggregate
amount of said valuations and interest. Tedious as the process
might be, a single legal proposition and no more, is involved in
it, and that is the question whether interest is demandable as
matter of strict legal right on damages which, until ascertained
and determined by the jury on a trial, are wholly unliquidated.
This question excludes all inquiry as to the discretionary pow-
er of jurors, to allow interest by way of damages in such a case,
for here the point was ruled as one of strict law. This being
the shape in which the proposition is presented, I shall exam-
ine it as one of that nature, and as wholly disconnected from any
question as to the right of jurors, in any case, to allow interest
as damages for the violation of a contract. And upon this, as a
legal proposition, all the authorities, English and American,
with a single exception, if indeed that, when properly under-
stood, is an exception, will, as I think, be found to agree.
Their language is uniform, that interest is never demandable
as matter of legal right, where the damages sought to be recov-
ered are unliquidated.

In an *anonymous* case, (1 *John.* 315,) being an action on a
policy of insurance, to recover for a partial loss on a cargo, a

question was raised whether interest was allowable, which was thus disposed of by the court. " The general rule is, that interest is not to be recovered on unliquidated damages, or for an uncertain demand. Jurors have, in many cases, a discretion to allow interest by way of damages, according to the circum stances of the case, and this is a case in which that discretion may be exercised." The rule of law laid down by the court in that case, is the principle on which Lord Chancellor Talbot proceeded in the case of *Ferrers* v. *Ferrers*, (*Cases Temp Talbot, p.* 2.) He said "the arrears of an annuity or rent charge are never decreed to be paid with interest, but where the same is *certain and fixed* ; and also where there is either a clause of entry, or *nomine pœnæ*, or some penalty upon the grantor which he must undergo, if the grantee sued at law, and which would oblige him to come into this court for relief; which the court will not grant but upon equal terms ; and those can be no other but decreeing the grantor to pay the arrears, with interest for the time during which the payment was withheld : *but interest for the rents and profits of an estate was never decreed yet, the sum being entirely uncertain."* In *Gilpins* v. *Consequa*, (*Pet. C. C. Rep.* 95,) the principle was thus stated by Mr. Justice Washington. " As to interest, that is a question generally in the discretion of a jury. But it is not agreeable to legal principles, to allow interest on unliquidated and contested claims, sounding so much in damages." *Holliday* v. *Marshall*, (7 *John.* 211,) was an action of covenant, in which a question arose as to the value of certain buildings and improvements, for which, by the covenant, the defendant was bound to pay. The plaintiff applied to the defendant to agree on the choice of indifferent persons to appraise the buildings and improvements, which he refused to do. The plaintiff thereupon procured three such persons to make the valuation, which they did, at 750 dollars. On the trial the plaintiff claimed interest on this sum from the time the defendant had notice of the appraisement. On this point the court said : " The plaintiff is not entitled to interest on the 750 dollars. The value of the improvements or amount of damages was uncertain and

unliquidated. Although the covenant provided for an appraise-
ment of the improvements, in case the land was not sold to the
plaintiff; yet the defendant was not a party to the appraise-
ment. He refused to unite in it, and there is nothing in the
covenant making an *ex parte* appraisement binding on the de-
fendant. The value of the improvements was open to inquiry,
at the trial; the plaintiff's claim is, therefore, to be considered
as resting in unliquidated damages, upon which interest is not
recoverable." Chancellor Sanford, in the *Renss. Glass Fac.*
v. *Reid,* (5 *Cowen,* 599,) was equally direct and explicit. "It
seems to me," he observed, "there is no difference whether the
demand upon which interest is claimed, lie in account or in any
thing else. This cannot be the criterion. *If the demand it-
self be unliquidated, it cannot carry interest*; and on the other
hand, if it be liquidated it may." . Precisely the same thing
was stated by Cowen, J. in giving the opinion of the court
in a more recent case, (*Still* v. *Hall,* 20 *Wend.* 52.) His re-
mark was in these words : "The principal would have stood
in the light of an uncertain demand, to be settled by process of .
law. *On such demands interest is not allowed.*" In *Dorrill*
v. *Stephens,* (4 *McCord,* 59,) Johnson, J. said, "It is well
settled that interest will not follow as a necessary legal conse-
quence on an open unliquidated demand." Similar extracts
might be made to almost any extent; but these are quite suf-
ficient, where, at the utmost, a single case stands in opposition
to them.

Upon the precise point now before the court, we have the
case of *The Executors of Van Rensselaer* v. *The Executors of
Platner,* decided by this court in 1806. (1 *John.* 276.) That
was, as this is, an action of covenant for *rent arrear, payable
in wheat.* The question was whether interest was recoverable
on the arrears of such rent. "*Per Curiam.* We are of opin-
ion, that as a general rule, interest is not recoverable in such a
case, and nothing appears, in this instance, to hinder the appli-
cation of that rule." But in *Clark* v. *Barlow,* (4 *John.* 183,)
which was also an action of covenant for non-payment of rent,
"the only question submitted to the court was, whether the

plaintiff was entitled to recover interest on a rent, being a specific sum payable *in money.*" The court said, " we are of opinion, that in an action of covenant brought to recover a sum certain, due for rent, and payable in money, the plaintiff is entitled to recover the interest." These cases, as it seems to me, were both determined on correct principles; the difference is between *an unliquidated demand for wheat or any thing else,* and a *certain sum payable in money.* On the first, interest does not follow as a necessary legal consequence, as it does on the last.

Let us now turn to the case of *Lush* v. *Druse,* (4 *Wend.* 313,) to which allusion has already been made as an exception to a series of authorities otherwise uniform and harmonious. That case was decided in 1830. It was an action of covenant on a durable lease, like the one in this case, and which reserved an annual rent of eighteen bushels and one-fourth of a bushel of good merchantable wheat, to be delivered in the city of Albany, on the first day of February, in each year. The plaintiff sought to recover for several years' rent, alleged to be in arrear. On the trial the value of wheat for the several years in question was proved, and the plaintiff claimed interest on the amount. On this question no opinion was expressed by the judge at the circuit, but finally, a verdict was taken for the value of the wheat, deducting a certain payment, " subject to the opinion of this court; the interest to be added if the plaintiff was entitled to recover interest." There were various other questions, but which need not be stated. According to what appears in the report of the case, the counsel for the plaintiff made but a single remark on the question of interest, which was that " the defendant was in fault, and therefore chargeable with it." For this he referred to, 5 *Cowen,* 144; *id.* 615. The counsel for the defendant does not appear to have said any thing on the point. Chief Justice Savage delivered the opinion of the court, and on this question he said : " I can see no possible objection to the allowance of interest. The value of the wheat became due on the first of February, in each year, in consequence of the default of the defendant in not delivering

the wheat according to contract; and interest is as much the right of the creditor after the principal becomes payable as the principal itself."

· If this is to be understood as the statement of a legal principle, it cannot, as I think, be maintained. It may be, where the sum is liquidated and fixed, that, after default in payment, interest is as much the right of the creditor as the principal itself, but it never was held that such was the rule where unliquidated damages remained unsatisfied. The cases all stand opposed to such a principle; and we should, as it seems to me, do great injustice to Chief Justice Savage, by understanding what he said as the annunciation of a legal principle. The verdict had been taken subject to the opinion of the court on a case containing the *evidence* given on the trial, and which, so far as relates to matters of fact, substituted the court for the jury. This practice, although condemned as confounding the powers of the court and jury, and as " subversive of the fundamental principles of our jurisprudence," (*Hubbard* v. *Chenango Bank*, 8 *Cowen*, 100,) was continued until a late revision of the rules when it was abolished, it being declared by rule that no verdict should thereafter " be taken subject to the opinion of the supreme court, except where the parties shall agree on the *facts* proved, or where such *facts* shall be found by the jury." (*Rule of* 1845, *No.* 36. *Banyer* v. *Ellice,* 1 *Hill,* 24.) When the case of *Lush* v. *Druse* was decided, the old practice, however, was in vogue, and the verdict being subject to the opinion of the court on the evidence set out in the case, the court were required to decide upon it as the jury should have done, and as they might have allowed interest by way of damages for the breach of covenant, the court might do the same. What was said by Chief Justice Savage, I understand as expressive of what might, very properly, be held and done by a jury in such a case. They might allow interest as well as the value of the wheat, as only a just equivalent for the damages sustained by the breach of covenant; and as this would be proper for the jury to do, it was equally so for the court in the exercise of a similar power.

No authority on this point was referred to, in deciding *Lush* v. *Druse*, and it may, as I think, reasonably be inferred from what appears in the opinion of the court, that none had been examined. Certainly, if adjudged cases on the point had been consulted, it could not have been said, as mattter of law, that interest, on unliquidated damages, was as much due as the damages themselves. The habit of Chief Justice Savage was to fortify his opinions on points of law by copious references to adjudged cases; and I venture to say he would never have decided that interest was a necessary legal consequence in any case like the one before him, without a full examination of the authorities on the subject. Looking then at the shape in which the question of interest was presented and disposed of in that case, I understand what was said by the court as amounting to this, that in such cases the jury have a discretion to allow interest by way of damages, and as that was a point then to be determined by the court instead of the jury, it was only just and equitable to allow interest on the value of the wheat as found by the jury. Understood in this sense the case of *Lush* v. *Druse* is not an authority for holding that the law, in any case, imperatively requires interest to be given on unliquidated damages; nor is it, as it otherwise would be, in direct conflict with the case of the *Executors of Van Rensselaer* v. *Platner*, already referred to, and the current of authority on the subject.

On the argument of *Lush* v. *Druse*, the case of *Spencer* v. *Tilden* was referred to by the counsel for the plaintiff, as an authority for the allowance of interest, and our attention has been called to the same case as in point on the present occasion. *Spencer* v. *Tilden* was brought on a written agreement to pay and deliver three hundred and sixty dollars, or twelve good cows and twelve calves, at a time and place specified in the agreement. Two defences were set up—first usury, and secondly performance. On the trial a verdict was taken for the value of the cows and calves, with interest, in all two hundred and eight dollars, no question as to interest being made at any stage of the cause. The court held the three hundred and sixty dollars to be in the nature of a penalty, and there

being no usury in the case, the plaintiff had judgment on the verdict. A legal rule for the allowance of interest cannot well be deduced from a case in which no such question was made, and this case of *Spencer* v. *Tilden,* as it seems to me, is not to be regarded as any authority whatever, on such a point.

The opinion of *Spencer,* senator, in the case of the *Renss. Glass Factory* v. *Reid,* (5 *Cowen,* 615,) was also referred to by counsel in the case of *Lush* v. *Druse.* The question in the first of these cases was, as to a right to interest on divers sums of money advanced by an agent, and not as to interest on unliquidated damages. That case contains a very full, and, as I think, a very just, exposition of the law of interest on loans and advances of money. But there was no claim in that case for interest on unliquidated damages, nor was any thing said in deciding it which gives countenance to the idea that the law adjudges interest to be payable on such damages. The opinion of Senator Spencer was probably referred to for the position of the counsel, that the defendant, being in fault, was chargeable with interest. At the page cited, the opinion, which is throughout lucid and cogent, adverts to several adjudged cases, and then follows this remark : " All these cases allow interest where there has been fraud, injustice or *delinquency.*" But the cases thus referred to were for certain sums of money, and not one of them, like this, for unliquidated damages ; the remark therefore is quite inapplicable here. Every one who omits to perform his engagements, is in fault or delinquent ; as much so where the damages are uncertain, as where they are liquidated. To say that all who are delinquent must pay interest, is saying that it must be paid in every case where an action on contract is sustained, a point never yet held in any case.

I have assumed, throughout, that the jury in ascertaining what damages had arisen from the breach of covenant complained of in this case, might compute and allow interest on the value of the wheat, hens and service, for which the defendant was delinquent. There are many cases arising on contract in which this may be done, and the present, in my opin-

Van Rensselaer's Executors *v.* Jewett.

ion, is of that description. Not that the law requires such an allowance to be made, as was held at the circuit, in this case, but the jury may or may not allow it, as shall seem to them just and equitable under the circumstances of the particular case. (*Anonymous*, 1 *John. R.* 315 ; *Renss. Glass Fac.* v. *Reid*, 5 *Cowen*, 587, *opinion of Spencer, sen. ; Dox* v. *Dey*, 3 *Wend.* 356 ; *McIlvaine* v. *Wilkins*, 12 *N. Hamp.* 474 ; *Eddowes* v. *Hopkins, Doug.* 361 ; *Arnott* v. *Redfern*, 3 *Bing.* 353 ; *Page* v. *Newman*, 9 *B. & C.* 378 ; *Letcher* v. *Woodson*, 1 *Brock.* 212 ; *Selleck* v. *French*, 1 *Conn.* 32 ; *Hovey* v. *Newton*, 11 *Pick.* 421.) But this point is not material here. It was not made at the trial or on the argument, nor has it been examined with a view to a final opinion. I have merely stated my impression, for no decision on the point can be made as this case is now presented. If my present views of the question should turn out to be erroneous, it would, in no degree, affect the particular point to be decided on the present occasion.

But if the case of *Lush* v. *Druse* could be taken as in point, to maintain the ruling of the judge on the trial of this cause, I should be unable to follow it as a controlling authority. Understood as announcing a legal principle, that case is in direct conflict with the judgment of this court in the *Executors of Van Rensselaer* v. *Platner*, to which reference has been made, and which, no doubt, would have been regarded as controlling on the legal proposition, if the case had been brought to the notice of the court. It was not, however, referred to on the argument of *Lush* v. *Druse*, nor, indeed, was any case on the question of interest cited by the counsel for the defendant on that occasion. Neither did the court refer to that or any other authority on the subject; but the case was, apparently, decided without any examination of the question as one of pure law. These considerations would induce me to disregard the case as authority, if I understood it as decided on a question of law. But understanding that case as I do, it is not in conflict with any other, and its authority is in no degree drawn in question.

I think there should be a new trial in this case.

New trial denied.