May Term,
1859.

THE BOARD
OF TRUS-
TEES, &c.,
v.
HUSTON.

———————•◦•◦•·———————

## THE BOARD OF TRUSTEES OF THE WABASH AND ERIE CANAL *v.* HUSTON.

An objection to the rendition of judgment upon a report of referees, not based upon anything before the Court, may be disregarded.

If referees err upon any question of practice during the hearing, objection must be made then and there, and incorporated in either a bill of exceptions or a statement of the referees in their report.

Referees may be required to report the facts found; but that requirement does not extend to the evidence by which those facts are proved; and it is ground for rejecting the report, if they report the evidence instead of the facts proved. The rule as to special verdicts applies to special reports of referees.

Monday,
May 30.

APPEAL from the *Hendricks* Circuit Court.

PERKINS, J.—Suit by *Huston* against the trustees of the *Wabash* and *Erie* canal, to recover for work and labor.

Answer by the defendants.

Reply by the plaintiff.

And thereupon, by agreement of the parties, the matters in controversy in the suit were referred to the decision of *Samuel B. Gookins* and *Samuel C. Willson*, the latter selected by the plaintiff, and the former by the defendants; or, in the event of the refusal of said *Gookins* to serve, then to *Elisha M. Huntington* in his stead, and in the event of

May Term,
1859.

THE BOARD
OF TRUS-
TEES, &C.,
V.
HUSTON.

said *Willson* refusing to serve, then to *William M. Franklin* in his stead; and, in case of the disagreement of the aforesaid referees, says the entry of reference, they shall have the power to select a third, to whom said matters of difference shall be submitted, and who, in said event, shall aid jointly with them in making the report herein; and it is ordered, in the entry of reference, that said matters in controversy be referred as aforesaid, and that said referees meet at *Highland*, in *Clay* county, on *Wednesday*, the 28th instant, to hear the testimony and decide upon said matters; that they sit from day to day until the same is closed, and that they, or a majority of them, in case they select a third, report their decision to this Court at the next term, together with the facts found, and the conclusions of law separately, and this cause is continued till the next term, and said plaintiff has leave of Court to withdraw all the papers herein for the use of said referees.

At the next term, the referees filed their report as follows:

"We, *Samuel C. Willson* and *Samuel B. Gookins*, to whom was referred certain matters of controversy pending in the Circuit Court of the county of *Hendricks*, in the state of *Indiana*, between *William R. Huston*, plaintiff, and the board of trustees of the *Wabash* and *Erie* canal, defendants, having taken upon ourselves the burthen of said reference, and having heard the evidence of the parties and the arguments of counsel, do make this report upon the law and facts to us submitted, in manner following, to-wit:

"We find that the parties entered into a contract in writing, as set forth in the complaint, for clearing off the timber by the plaintiff from the *Birch Creek* reservoir of the defendants, a copy of which is annexed to the complaint; that the said contract was entered into fairly by both parties, and that the evidence does not show any fraud or mistake in the making of said contract, which requires it to be reformed.

"We find, from the evidence, that the plaintiff entered in due time upon the work mentioned in said contract;

May Term,
1859.

The Board
of Trus-
tees, &c.,
v.
Huston.

that he prosecuted the same with reasonable diligence, and that he performed two-thirds of the work stipulated to be done, and that it was done in the manner directed by the defendants' engineers.

" We find that the plaintiff was entitled, by the terms of the contract, to be paid for the work so done at the rate of 15 dollars per acre, and all the timber upon the land to be cleared.

" We find that the land to be cleared amounted to six hundred and ninety-five acres, and that the plaintiff was and is entitled to receive therefor in money, the sum of 10 dollars per acre.

" We find that the timber upon said land, to which the plaintiff was entitled, was of the value of 9 dollars per acre, amounting to the sum of 6,255 dollars.

" We find that the defendants caused or permitted the land which was to have been cleared, to be overflowed with water, by closing the gates, or permitting them to be and to remain closed, by which, if they had been left open, the water would have passed off, and the said land to have been cleared would not have been overflowed; that this occurred about the 1st day of *December*, 1854, and that, in consequence of such overflow, the plaintiff was forced to abandon his work and the timber to which he was entitled; and that, if said land had not been so overflowed, the plaintiff would have had a reasonable time in which to complete the work, and secure the timber before the 1st day of *February*, 1855.

" We find the price of the work done, and the value of the timber, to be 13,205 dollars; that there has been paid to the plaintiff the sum of 7,120 dollars; and that there remains due from the defendants to the plaintiff the sum of 6,085 dollars, which sum, with the costs of this suit which have not heretofore been ordered to be paid by either party, we report to be paid by the defendants to the plaintiff.

" We find that on the 14th day of *June*, 1855, *William J. Ball*, the engineer named in the contract, made a final estimate, in which he estimated the work done by the plaintiff at 6,130 dollars.

May Term,
1859.

THE BOARD
OF TRUS-
TEES, &C.,
v.
HUSTON.

"Upon the questions of law arising on the foregoing facts, we are of opinion that the contract must, so far as it can be followed, determine the measure of compensation. The value of the labor, according to the testimony of witnesses, is much greater than we have allowed; but we have not been governed by the testimony except in respect to the quantity of work done, and the value of the timber, the latter not being fixed by the contract. We have, therefore, taken the proportion of the price per acre of the work done, and the value of the timber, as the measure of damages.

"The contract provides that the value of the work done under it should be determined by the estimate of the engineer; but whatever might have been the effect of that stipulation, if the work had been completed by the plaintiff, or left unperformed by his default, we are of the opinion that the defendants cannot claim the benefit of it when its completion has been prevented by their acts.

"It is insisted by the defendants that the grounds were submerged by the rains that fell upon them, and a flood in *Birch Creek*, the waters being detained by the dam, and closing of the gates; and that it was the duty of the defendants, under the law, to detain the waters to supply the canal for purposes of navigation, and that the plaintiff entered into the contract with full knowledge of this legal obligation.

"It is manifest that but for the closing of the gates, there was no such quantity of water as would have put a stop to the work. That event, therefore, must be referred to the closing of the gates. No doubt the law requires the trustees, so far as they have the means, to furnish the canal with water for purposes of navigation; but this general provision of law cannot be allowed to control, or authorize the breach of a positive contract.

"It is urged that there is not sufficient evidence that the gates were closed by the defendants' orders. There is, at least, abundant evidence that they were closed and kept closed with their consent and approval. In our opinion, they were as much bound to furnish the plaintiff with a

May Term,
1859.

THE BOARD
OF TRUS-
TEES, &C.,
v.
HUSTON.

clear field for his operations as one would be who had contracted with a mechanic to build a house, to furnish an eligible site for it. The nature of the work negatives the idea that it could be done under water. The plaintiff had no control of the gates. He was helpless in the premises; and if the defendants deemed it necessary to close them, we think they are bound to respond to the plaintiff for the injury he has sustained thereby.

"*January* 22, 1858.

*S. C. Willson,*
*S. B. Gookins.*"

This report was duly returned to the Court and filed.

The defendants appeared and filed thirteen causes why judgment should not be rendered upon the report. A part of them related to the action of the referees at the hearing, in regard to the admission and rejection of evidence, and to their conclusions as to what the evidence proved.

These objections were not based upon anything before the Court, and were properly disregarded. No exception was taken on the trial before the referees. If they erred upon any question of practice during the hearing, the party should have objected then and there, and had the objection incorporated, either by bill of exceptions, or statement of the referees, in their report. This is the plain import of the statute, and is held to be the proper practice in *New York*. Voorh. Supp. 167. The code declares that "the trial by referees is conducted in the same manner as a trial by the Court." 2 R. S. p. 116, § 350. They may be required to report the facts found, and were thus required in this case. But that requirement does not extend to the evidence by which the facts found are proved; and it would have been ground for rejecting their report, if they had reported the evidence instead of the facts which it proved. This is the rule as to special verdicts and special findings by the Court. *Sisson* v. *Barrett*, 2 Comst. 406. The rule is the same as to special reports of referees. The statute, *supra*, and *Johnson* v. *Whitlock*, 3 Kern. 344.

The exceptions to the report based upon the application of the law to the facts found, were, we think, correctly overruled.

*Per Curiam.*—The judgment is affirmed with 5 per cent. damages and costs.

Hanna, J., absent.

*R. W. Thompson*, for the board.

*J. M. Hanna*, for the appellee (1).

May Term,
1859.

THE BOARD
OF TRUS-
TEES, &c.,
v.
HUSTON.

(1) Judge *Hanna* submitted the following argument:

The referees were not required to report the evidence, but only the facts they found from that evidence. Notwithstanding this, the 1st, 2d, and 8th specifications, in the exceptions, are based upon questions connected with the evidence, which could not be determined unless it was properly before the Court. The referees did not certify the evidence to the Court, nor was it embodied in a bill of exceptions, or, in any other manner known to the law, placed upon the records of the Court, so as to be examined. The force of this was felt and anticipated by the appellants; and after the report had been made and filed, they procured the *ex parte* affidavits of the gentlemen who had served as such referees, and offered to, and did, file them in reference to the said evidence having been reduced to writing, &c.

These gentlemen had no right, at the time these affidavits were made, to have certified to the correctness of the evidence written down. Their powers had ceased. *The Indiana Central Railway Co.* v. *Bradley*, 7 Ind. R. 53. Much less could they bind the parties by *ex parte* affidavits.

But even if they had, without having been required to do so by the order of the Court, seen proper to have written down and certified the evidence, we think it is exceedingly doubtful whether the Court would have been justifiable in considering it. *Bigelow* v. *Newell*, 10 Pick. 348.—*Ward* v. *The American Bank*, 7 Met. 486. And if it would have been proper to look into the evidence, the party objecting to the rendition of a judgment thereon would have been in no better condition than if the verdict of a jury had been returned against such party, and the object was to get clear of it. 2 R. S. p. 233, § 24. —7 Ind. R. 54.—*McKinney* v. *Pierce*, 5 *id.* 422.

The appellee contends that our statutes are so ample as to give the referees authority to try questions of law and fact (2 R. S. p. 116, § 349); that they have the same powers as a Court to receive or exclude evidence, to make up a record, and consequently to sign bills of exceptions. *Id.* p. 116, § 350. If required, they make a special finding of the facts, which then stands as a special verdict. *Id.* p. 117, § 350. And upon *that* the Court would find the law, and pronounce the judgment. But if required, they must find the facts (which are equivalent to a special verdict), and also the conclusions of law thereon (which stand in the place of the judgment of the law to be found by the Court upon the special verdict). *Id.* p. 116. In a word, when both these duties are required of the referees, their report stands as the "decision of the Court," and judgment is to be entered thereon. *Id.* p. 116. If this is correct, then, *quære*, ought not the evidence, to have made it a part of the record, to have been contained in a bill of exceptions signed by the referees? and ought not a motion for a rehearing to have been made before *them*, to enable a party to obtain the benefit of that evidence and exceptions?

May Term,
1859.

THE BOARD
OF TRUS-
TEES, &c.,
v.
HUSTON.

If they are not required to report either the law or the facts, then their report stands as the general verdict of a jury. 2 R. S. p. 233.—7 Ind. R. 54. And no way exists to get the evidence, upon which that finding is based, before the Court, unless the right exists to take a bill of exceptions, to be signed by said referees. 7 Ind. R. 58. The facts may be brought before the Court by requiring them to be reported, &c. Indeed, the appellee insists that upon a reference, there is no mode provided by our present practice, to bring the evidence heard by the referee, before the Court.

We, therefore, earnestly insist that the Court did right to refuse to go behind the facts found, to look into the evidence.

As to the 3d and 4th specifications, they relate to the rulings of the referees in regard to the admission of evidence. If the views we have already expressed in reference to rights and powers of referees and parties, are correct, then these objections at once fall, for they are not in such shape as will enable this Court to consider them. How is it known to this Court, or the Court below, what those rulings were? For aught that legally appears in the record, there was no objection to the admission of any evidence, or it might all have been received by the agreement of the parties.

The balance of the specifications, except the last two, are based upon the conclusions of law arrived at by the referees. There was no formal motion made to set aside the report, but the resistance came in the form of an objection to the rendition of judgment upon said report.

Waiving this objection for the present, for the sake of the argument, and assuming as true that the facts reported stand as the special verdict of a jury, the question presents itself, first, whether the conclusions of law thereon by the referees were correct; and if not, then, secondly, whether the general determination of the referees is supported by the facts found, without regard to such erroneous conclusions of law, if any such exist.

The principal error complained of in the decision of the law, is mentioned in several forms in the 5th, 6th, 7th, 9th, and 10th specifications, which are, we suppose, based upon this conclusion of the referees, to-wit:

"No doubt the law requires the trustees, so far as they have the means, to furnish the canal [with water] for the purpose of navigation; but this general provision of law cannot be allowed to control or authorize the breach of a positive contract."

This sentence, together with what precedes and follows it in the finding, it is asserted by the appellants, does not contain a correct exposition of the law.

By the statutes of 1846 and 1847, the canal, with its appurtenances, and the revenues and lands belonging thereto, were to be transferred to certain trustees for the benefit of the bondholders of the state. The proceeds of these lands, &c., were, to a certain extent, to be applied to the completion of the canal, which was then in an unfinished condition. Acts of 1846, p. 7. And, generally, by § 10, p. 10, it was made the duty of the trustees to complete said canal; and, by § 23, p. 15, they were empowered to locate and construct reservoirs, &c., necessary to supply said canal with water. It is now assumed that this was an absolute duty or obligation resting upon said trustees, of so binding a character, as to justify them in the breach of a contract entered into for the very purpose of enabling them to discharge this duty. The pleadings and facts found, show that the trustees were constructing a reservoir to supply water to said canal. They will not presume to say that such structure was not

May Term,
1859.

THE BOARD
OF TRUS-
TEES, &C.,
v.
HUSTON.

necessary, for that was the only condition upon which they were empowered to build it. Then, conceding that it was necessary, and was in process of construction under the written contract which the referees find was entered into, we insist that, although there may have been a general and ultimate obligation resting upon the trustees to supply water as far as they could do so, yet that obligation was, as a matter of course, and of necessity, subsidiary to the more immediate and pressing obligation to first construct the works, and then furnish the water which such works were intended to supply. If the position of the trustees is correct—that it was their duty, under the law, to detain the water in the unfinished reservoir, even in violation and breach of a subsisting contract to complete the same—such position can be correct on one hypothesis only, i. e., that the work to be done under the contract was not necessary to be done to furnish a sufficient supply of water; and, therefore, that they were expending large sums of money, in violation of their duty, their oath, and the trust reposed in them as such trustees. This we cannot believe they will concede.

But looking at the matter in a more strictly legal sense, we do not believe that there was any such duty devolved upon them in that respect as would exonerate and discharge them from solemn contracts legally entered into. Here was a contract regularly entered into, under which the contractor had expended large sums of money. They had authority to "make contracts for work and labor on said canal," &c. · Acts of 1846, p. 10, § 10. And the word "canal" includes reservoirs. Id. p. 15, § 23. And as between said trustees and a contractor, to do such work, we say that they cannot, in law, and as a bar to the payment for such work, be permitted to say this work was not necessary; they are estopped by the contract from setting up such defense. The necessity of it cannot be inquired into in such proceeding. It is presumed to exist, and that they were in the line of their duty in engaging the doing thereof. Therefore, a contract made for such purpose cannot be violated with impunity; and if so violated, they must, in the language of the referees, "respond in damages." The Court did right, therefore, to overrule such exceptions as applied to that point.

But if we are mistaken in this, and the exceptions should have been sustained to the conclusions of law above discussed, then we contend that, such legal conclusion having been disapproved and set aside, would leave the finding of facts standing as, and even stronger than, the special verdict of a jury; and the business of the Court would be to render judgment, upon such finding of facts, as the Court might find the law to be arising thereon.

The facts found in this case, then, fully authorize the judgment entered.

The issues made, and the finding applicable thereto, are as follows:

Complaint.—The first paragraph of the complaint is on a written contract, alleging performance, and failure of defendants to pay.

Answer.—The defendants deny that the plaintiff performed, &c., and aver that he did not, and that they paid for work done, &c.

Reply.—The plaintiff reiterates performance on his part, and failure to pay, and denies affirmative matter.

The referees find that the contract was entered into, &c.; that it was two-thirds completed, in accordance with directions; and that the plaintiff was, by the acts of the defendants, prevented from completing the same; and they

May Term,
1859.

THE BOARD
OF TRUS-
TEES, &c.,
v.
HUSTON.

find the value of the work done by, and the amount of the damage caused to, the plaintiff.

Upon that finding, then, the law would give the plaintiff a judgment. See 1 Smith's Lead. Cases, top p. 43, subdivision 4, where many authorities are cited.

Complaint, second paragraph.—On the contract, and an averment that by the acts, &c., of the defendants, the plaintiff was compelled to, and did, abandon the said work, after having expended, &c.

Answer, second paragraph.—Denial of part performance, &c., or that he was compelled to abandon, &c., or that they failed to pay, &c.; averment, that he was paid, &c.

Reply, second paragraph.—1. A denial. 2. Reiterating specific acts of the defendants, which compelled him to abandon, &c.

Finding as above referred to, and specifying acts of defendants which prevented plaintiff from completing, and that he would, but for them, have completed the work, &c.

We say, then, that upon this issue, the plaintiff was entitled to a judgment by the law.

Complaint, third and fifth paragraphs.—Each avers that a contract was made; and the third avers that, by mistake, certain stipulations were inserted and others left out of the written contract, &c. The fifth had like averments, and that the omission and insertions were through the fraud, &c., of defendants, &c. Averments in both, of part performance by plaintiff, and failure by defendants to perform, &c.

Answer, third and fifth paragraphs.—Denial of contract as averred, or of mistake, or fraud, &c.

Replies, third and fifth paragraphs.—Denials of affirmative matter, &c.

Upon these two paragraphs (though not specially applied to them) the finding is, that the contract (written) was fairly entered into, and that the evidence did not show fraud or mistake, &c.; and the other portions of said issues on said paragraphs are in effect for the plaintiff.

We do not desire to go at length into the question of whether the judgment should be for the plaintiff or the defendants on the finding as appplicable to the issues made upon the third and fifth paragraphs of the complaint, for the reason that we believe that the judgment of the Court can be amply sustained upon the finding as applied to the other paragraphs.

Complaint.—The fourth paragraph is for work and labor, for materials, for money paid, &c., and for property taken, &c., to-wit, logs, timber, wood, &c.

Answer.—The fourth paragraph is a denial, &c., and averment that plaintiff is indebted, &c., for money, &c.

Reply.—The fourth paragraph is a denial of the affirmative matter.

The finding is that the plaintiff was to have 15 dollars per acre for the clearing, and the timber, logs, and wood; that before the completion of the contract, the defendants turned, and caused to be turned, large amounts of water upon the ground to be cleared, so as to submerge and overflow the same, and the said timber, logs, wood, &c.; that, in consequence of such acts, the plaintiff was compelled to abandon the work and his said logs, &c.; that, but for such overflowing, he would have completed his contract and secured the use of his said timber, &c., before the day fixed for the completion of said

contract; that said timber was of the value of 9 dollars per acre; that the May Term, price of the work done and value of timber was 13,205 dollars; the amount **1859.** paid, 7,120 dollars; amount due, 6,085 dollars, which sum is found for the plaintiff.

Take the whole finding, and we undertake to say that, without doubt, the law upon the same is in favor of the judgment entered thereon; for the submission of the matters in controversy, if the submission had stopped there, would have required of the referees a report of a character that would have caused them to determine the law and the facts both, and such determination would have been final and binding upon the parties in the absence of fraud. The mere fact that the referees, besides determining the matters in controversy, were also required to report the facts and conclusions of law, did not divest them of the right, nor clear them of the responsibility, of determining such questions of law and fact generally, and as fully as if the additional and special report had not been required of them.

If the report of referees is, as may be contended, to be governed by the same rules as awards, then none of the statutory reasons, or causes, have been assigned for setting the same aside. 2 R. S. p. 231. And, *quære*, can any other be assigned?

As to the 11th specification, it assumes that the referees had come to the conclusion that the law unconditionally and positively required the trustees to furnish a clear field for operations; when, in fact, the conclusion is only comparative, *i. e.*, that they were as much bound to do so as a person who had contracted with a mechanic to build a house is bound to furnish an eligible site for it. Therefore, if there was no legal obligation in the one case, there would be none in the other; but if there was a legal obligation in the instance of the house, we would like to see why there would not be in the other. It is true, the reasons, following this proposition, by the referees, about withdrawing the water, leads to the determination that, so far as the trustees had power to do so, they ought to have kept off the water—that it was a legal right the contractor had to expect. And we would like to see any reason given to show that they were wrong.

There was a further argument by Judge *Hanna*, and a lengthy brief by Mr. *Thompson*, upon points not touched in the opinion of the Court.