Roush v. Emerick.

No. 8979.

ROUSH v. EMERICK.

<div style="float:right">80 551<br>141 699</div>

PRACTICE.—*Trial by Referee.—Finding.—Exception.—Supreme Court.*—Where a cause is tried by referee under the statute (R. S. 1881, sections 556 and 557), and, pursuant to requirement, the referee states the facts found and his conclusions of law separately, exception to the conclusions of law may be filed with the referee, and by him reported to the court, which makes them a part of the record without a bill of exceptions; and in that case, if the court sustain the exceptions, no exception by the party complaining of the ruling is necessary to save the question for the Supreme Court.

SAME.—*Conclusions of Law.—Judgment.*—Where, after sustaining exceptions to the conclusions of law of a referee, the court renders judgment upon the facts found, without objection or exception, no question can be made thereon in the Supreme Court.

SAME.—*New Trial.*—If the finding of facts by a referee be not questioned, but exceptions to his conclusions of law be sustained by the court, there is no reason for a new trial, but the court should then render judgment in favor of the party entitled to it upon such facts.

LANDLORD AND TENANT.—*Crops.—Rent.—Contract.—Delivery.—Notice.—Demand.*—If by the terms of a lease the tenant is required to divide the crops, and deliver to the landlord a share thereof at a certain time and place, and does not do so (the landlord not attending), but keeps the property undivided in bulk, and then, on reasonable notice and demand, fails so to divide and deliver at the place where the property is, he is liable for the value of such share, though after that he may offer to divide and deliver.

From the Noble Circuit Court.

---

---

*M. B. Williams*, for appellant.

*A. A. Chapin*, for appellee.

BICKNELL, C. C.—John Emerick and Diana Emerick agreed in writing with Daniel Roush, to rent to him two farms, from April, 1878, to April, 1881.

Roush was living on one of the farms; on the other, which was called the Stanton farm, the Emericks were living, and were to continue living there—they occupied the house and barn there. Roush was to farm both farms as he should think best for the interest of all parties, and by way of rent was to deliver every year to the Emericks one-half of all the products of said farms, except the potatoes and hay; he was to deliver only one-third of the hay, and of the potatoes as much only as the Emericks should need for their own consumption; the expense of all seed sowed and planted, and of all threshing, was to be borne equally by the parties; but the Emericks were to pay for repairing fences, and all other necessary repairs. The writing did not state where the one-half of the products, and the one-third of the hay, and the necessary quantity of potatoes were to be delivered to the Emericks; and it did not state how far apart the two farms are.

In May, 1879, John Emerick died, and Diana Emerick employed an agent; there was a dispute between the agent and Roush as to the place where the crop for 1879 should be delivered; and in March, 1880, Diana Emerick brought this suit against Roush, alleging breaches of the agreement as follows:

1st. That Roush, in 1879, raised on the farms eleven hundred bushels of oats, of which plaintiff's share was five hundred and fifty bushels, of the value of $275, and also harvested hay of the value of $80, of which one-third belonged to the plaintiff; and that, although the plaintiff fully performed all the covenants on her part, yet the defendant did not deliver either the oats or the hay, to her damage $350.

A demurrer to the complaint for want of sufficient facts, etc., was overruled.

The defendant answered by a general denial, and the parties agreed that all matters of defence, in bar, or set-off, or counter-claim, might be given in evidence under that answer, and by like agreement, the cause was "referred for trial upon all questions of law and issues of fact under the pleadings," to a referee, "with all the powers granted to referees by section 350 of the Code of Practice, with the right in either party to require the referee to state the facts found and the conclusions of law separately." The referee reported as follows:

"The plaintiff requested me, as such referee, to find specially the facts and the conclusions of law thereon, and I report as follows:

"FINDING OF FACTS.

"1st. I find the lease, mentioned in the complaint, was executed by the parties therein named at the time the same bears date, and that the defendant took possession in pursuance of such lease, and has held such possession ever since, and now holds such possession as tenant of the plaintiff.

"2d. I further find that said John Emerick died in May, 1879, leaving said Diana Emerick his widow.

"3d. I find that Sampson T. Emerick has been, since the death of said John Emerick, the agent of said Diana in relation to said lease, and has been recognized as such agent by said defendant.

"4th. I find that defendant raised a crop of oats on said premises in 1879, to wit: 1,046 bushels of oats, machine measure when threshed.

"5th. That on August 18th, 1879, before said oats were threshed, said Sampson Emerick, on behalf of plaintiff, notified defendant to deliver the plaintiff's share of said oats at the barn on the Stanton farm.

"6th. That the said barn was a reasonable and accessible place for such delivery; but that the granary therein was not in fit condition for the oats when they were threshed, which was about the 20th of August, 1879; and to have delivered

said oats there then, would have caused defendant some additional expense in the way of hands and teams.

"7th. I find that defendant did not deliver said oats in said barn.

"8th. I find that on February 2d, 1880, the plaintiff, by her said agent, notified the defendant that he, said agent, would be at the barn on the Smith farm, where said oats were stored by the defendant, on February 4th, 1880, to receive the plaintiff's share of said oats.

"9th. I further find that said agent was at said Smith farm, on said February 4th, with two wagons, two hands, and eighty sacks, and then and there demanded the plaintiff's share of said oats, and that the defendant then and there refused to let said agent have the plaintiff's share of said oats, or any part thereof.

"10th. I find that the defendant's excuse for not delivering said oats then and there was, that the patent machine-measure or box, in which said oats were measured when threshed, was not there that day, and that all the oats were in a pile in said barn, except two hundred bushels, taken by defendant at the time of threshing, and measured in said machine-measure, and that he did not then know where said machine-measure was, and that said oats could not be measured in any other measure on account of shrinking of said oats since the threshing, as they were wet when threshed, and I find that they were wet when threshed.

"11th. I find that the defendant did not, prior to February 10th, 1880, have the plaintiff's share of said oats measured and set apart for her, but the defendant, on February 10th, 1880, divided said oats at the Smith barn, and then and there measured and set apart the plaintiff's full share of said oats, which was five hundred and one bushels, and notified said agent that the plaintiff's share of said oats was measured and set apart for her at said Smith barn, where the same were threshed, and I find that the said Smith barn was a reasonable place for said oats to be.

"12th. That the value of the plaintiff's share of said oats, on the 4th day of February, 1880, was $175.35.

"13th. I find that the defendant made some repairs on the leased premises, by clearing off corn ground in April, 1879, and that said work was worth $3, and that, in June, 1879, the defendant rebuilt some fence blown down by wind, which work was worth seventy-five cents; said repairs done in June, 1879, were after the death of said John Emerick.

"14th. I find that the defendant furnished twelve bushels of seed oats, which the lessors should have furnished, worth $4, and seed corn worth $1.25, which the lessors should have furnished, all before the death of said John Emerick; that the defendant did not notify the lessors, or either of them, that he stood in need of said seed so furnished by him.

"15th. That the defendant harvested on said leased premises in 1879, twenty-one loads of hay in proper time, and delivered to the plaintiff her full share thereof at the barn on the Stanton farm, the place where it should be delivered, and that said hay was in good order.

"16th. That the defendant occupied said premises as John Emerick's tenant, when the lease in controversy was made, and had so occupied the same for eight years next before that time, and that it was usual, during all of that time, to divide the small grain by the lessor and the lessee, at the machine, when the same was threshed.

"17th. That the defendant, on August 18th, 1879, notified the plaintiff's agent that he would thresh said oats on the 20th day of August, 1879, and that he should be there and receive the plaintiff's share thereof; that defendant did thresh said oats on said 20th day of August, 1879, but neither plaintiff nor her agent was present there to receive said share, or give directions concerning the same, and that said threshed oats were placed in bulk in the barn.

"18th. That on February 10th, 1880, when defendant offered to deliver to the plaintiff her share of oats, her full share was only 501 bushels, by reason of shrinkage, and that defendant

had them on hand at the barn, on the premises where threshed, and at the time this suit was begun had and still has the same on hand, ready to be delivered, except some that may have been destroyed by rats or mice, or by lying in the barn so long, and that said oats have been ready for the plaintiff ever since February 10th, 1880.

### "Conclusions of Law.

"1st. The defendant was not bound to deliver the plaintiff's share of said oats at the Stanton barn, and it was the duty of the plaintiff to be present by herself or her agent, at the time and place of the threshing, to receive her share or give some direction concerning the same.

"2d. The tender by the defendant to the plaintiff's agent, on the 10th of February, 1880, of the plaintiff's share of the oats, released the defendant from any further liability as to the delivery of said share, and the plaintiff can not recover anything in this action.

"3d. The defendant can not recover anything on his cross complaint against the plaintiff.

"4th. The law is against the plaintiff on all the issues except as to the cross complaint of the defendant, and the plaintiff has no cause of action against the defendant, and the defendant must recover costs against the plaintiff. Signed," etc.

The plaintiff filed before the referee exceptions to the foregoing report, which exceptions were returned to the court by the referee, together with his report, and with the following statement signed by the referee:

"The above exceptions were received by me at the proper time, and filed with the other papers in the cause, and are hereby returned with my report as referee. Signed," etc.

Said exceptions are as follows:

"1. That the said referee does not find whether the notice, shown to have been given by the plaintiff's agent on the 2d day of February, 1880, set out in the 8th paragraph of the findings of facts, was reasonable or not as to time.

"2. Each of the special findings of fact, numbered from one to eighteen inclusive, is defective and uncertain as to the facts so pretended to be found.

"3. For that the referee finds, as a conclusion of law, that the defendant was not bound, on request of plaintiff's agent, to deliver the plaintiff's share of the oats at the Stanton barn, but that it was the duty of the plaintiff to be present either in person or by agent, at the time and place where said oats were threshed, to receive her share, or give some direction about the same, whereas the referee should have found that it was the duty of the defendant to have delivered plaintiff's share of said oats at the Stanton barn.

"4. For that the referee finds that by the alleged tender to plaintiff's agent of plaintiff's share of oats, on February 10th, 1880, the defendant was released from any further liability, as to the delivery to the plaintiff of her share of oats, and that plaintiff can not recover anything in this action; whereas the referee should have found that said tender did not affect plaintiff's right to recover in this action, and should have found that the plaintiff was and is entitled to recover, notwithstanding said tender.

"5. For that the referee finds that the law is against the plaintiff, on all the issues joined in this cause, except as to the cross complaint of the defendant, and that the plaintiff has no cause of action, and that defendant should recover costs; whereas the referee should have found that the plaintiff was entitled to recover of the defendant the sum of $175.35, and should recover costs.

"6. The referee has erred in each and every conclusion of law in his report, found against the plaintiff."

Although these exceptions attack some of the findings of fact, as well as all the conclusions of law, yet the latter only seem to have been the subject of discussion. The record states that, after argument, said exceptions to the conclusion of law were sustained by the court, and that thereupon the plaintiff moved for judgment in her favor upon the facts found by the

referee for $175.35, which motion was sustained by the court, and judgment was rendered accordingly. The record does not show that the defendant made any objection or exception to the sustaining of plaintiff's said motion for judgment. It does not show that he made any motion for judgment or objected in any way to the form or substance of the judgment rendered. He merely prayed an appeal, which was granted.

He assigns errors as follows:

1st. The court erred in overruling defendant's demurrer to plaintiff's complaint.

2d. The court erred in sustaining plaintiff's exceptions to the conclusions of law reported by the referee.

3d. The court erred in proceeding to determine the case upon the findings of fact reported by the referee, after sustaining exceptions to the conclusions of law reported by said referee.

4th. The court erred in rendering judgment for the plaintiff upon the findings of fact reported by the referee, after having sustained exceptions to all of said referee's conclusions of law therein.

5th. The judgment rendered by the court is not sustained by the facts as found by said referee.

6th. The judgment of the court is contrary to law.

The first of these alleged errors is not alluded to in the appellant's brief, and is, therefore, regarded as waived.

The counsel for the appellee claims that the other assignments of error present no question for consideration, because the exceptions to the report are not set forth in any bill of exceptions.

These exceptions were taken before the referee; they were by him returned to the court, with his report and with the written statement hereinbefore set forth.

This court, in *The Board of Trustees* v. *Huston*, 12 Ind. 276, said: "If they" (the referees) "erred upon any question of practice during the hearing, the party should have objected then and there, and had the objection incorporated, either by

bill of exceptions, or statement of the referees in their report."
See *Way* v. *Fravel,* 61 Ind. 162.

In the present case the exceptions are substantially a part
of the referee's report; they are, therefore, properly in the
record, without any bill of exceptions, and it can not be said
that the second assignment of error presents no question for
consideration.

The third, fourth, fifth and sixth assignments of error call
in question the judgment rendered by the court, and these pre-
sent no question for consideration, because the motion of the
appellee for judgment was not resisted by the appellant. He
took no exception to the sustaining of that motion, nor to the
rendering of the judgment, and he made no motion to modify
or change the judgment. *Martin* v. *Martin,* 74 Ind. 207.

The second assignment of error, therefore, presents the only
question for consideration, viz., were the conclusions of the
referee in favor of the appellant right or wrong?

The evidence not being presented in a bill of exceptions,
the findings of facts by the referee must be taken to be the
truth.

The question is, who was in fault as to the delivery of the
oats? Here were two farms, cultivated by Roush for the Em-
ericks; they were living on the Stanton farm, and Roush seems
to have been living on the Smith farm. It does not appear
how far these farms were apart, and it does not appear on
which of the farms the oats were raised; but the referee finds
that the Stanton barn was a convenient and accessible place
for the delivery of the oats, but, wherever the oats were raised,
they were threshed by Roush at the Smith farm, and the con-
tract was that he should do the threshing and the other party
should pay half the expense of the threshing. The contract
did not provide either time or place for the delivery of the
oats; Roush had been Emerick's tenant for eight years prior
to the making of the lease in controversy, and they had been,
during the former tenancy, in the habit of dividing the oats
where they were threshed; but, after John Emerick died,

Diana, as his survivor, wanted her oats delivered at the Stanton barn; it would cost Roush a little more to deliver the oats there, and he refused to do it; then he notified Diana's agent to be present at the threshing, on a day named, to receive the oats; but the agent did not attend, and Roush on that day threshed the oats. It is questionable whether Diana, on succeeding to the sole interest in the contract, had not a right to say that she would have her oats delivered, under the contract, at the Stanton barn; but, conceding that the former usage is available in the construction of the existing contract, and that Roush had a right to refuse to deliver the oats, except at the place of threshing, and that the oats were threshed at the right place, then the question arises, what was Roush's duty, after having threshed the oats, nobody being there on behalf of the plaintiff to give any direction concerning them? What Roush actually did was this, he took out 200 bushels for himself, measured in a certain machine-measure or box, and then put all the oats in bulk in the Smith barn. Upon this it may be observed that Roush had no right to take 200 bushels or any other quantity, before the division was made, and the appellee had no right to take any of it until her share was set off to her. If the time and place of threshing were the proper time and place for division and delivery, and the appellee, on proper notice, had failed to attend, then the appellant might have divided the threshed oats and set apart the share of the appellee, and then that share would have been at the appellee's risk, but as long as he chose to keep it in bulk without division, it was not at the appellee's risk. He, the appellant, was bound to keep it safely and deliver it on demand. In the case of *Johnson* v. *Baird*, 3 Blackf. 182, this court said: "In the case of a contract for the delivery of specific articles, at a given time and place, if the debtor has the articles at the place on the day, ready to deliver, and the creditor does not attend to receive them, * * the debtor may, if he choose, set off the articles for the creditor, by weight, measure, count, or value, according to the contract,

and if the creditor do not come to receive them, the debtor may abandon them, and if he do so, he is discharged from all liability or responsibility; and if the articles be lost or damaged, the loss falls on the creditor. But if the debtor should not abandon the articles, but elect to retain them in his own possession, he is bound to keep them safely at his peril for the creditor, and is liable for them if they are damaged or lost; and he is bound to deliver them to the creditor whenever he calls at the place for them. * * * When the defendant * retains the articles in his possession, he is bound at his own peril and risk to keep them safely, and to deliver them to the creditor on his demand; and should he neglect or refuse to so do, he is liable in an action of trover." To the same effect is the case of *Rice* v. *Churchill*, 2 Denio, 145. On the 2d of February, 1880, the appellee notified the appellant that on the 4th of February, 1880, she would be at the Smith barn, where the oats were, to receive her share, and on that day she was there with wagons, hands and sacks, and the appellant was also there, and she demanded her share and the appellant refused it. The alleged excuse for refusing was that the box or measure, in which the 200 bushels taken by appellant were measured, was not then there, and that appellant did not know where it was; but he had two days' notice, and his business was to be ready, and if he could not find the box or measure used before, then to get some other accurate measure. It was his duty, under the cases above cited, to be ready when called on.

After this demand and refusal the liability of the defendant for the value of the appellee's share of the oats was fixed, and he could not afterwards relieve himself of that liability by dividing the oats and notifying plaintiff that her share was ready. In the case of *Van Rensselaer's Ex'rs* v. *Jewett*, 5 Denio, 135, the court said: "If default be made in the payment of the wheat at the day and the place specified, the party who was entitled to receive it is then entitled to the value in money as its value was on that day. The debtor can not af-

terwards absolve himself from the contract by tendering the
wheat in *specie*, nor in any other way than by the payment of
its value in money." It follows from what has been said, that
whether the appellant was right or not in refusing to deliver
the appellee's oats at the Stanton barn, the second, third and
fourth conclusions of law of the referee were clearly wrong,
and the court committed no error in sustaining the excep-
tions thereto. Upon the findings of the referee, the appellee
was entitled to recover the value of her share of the oats at
the time of the demand and refusal, which the referee found
to be $175.35, and the findings of fact of the referee being
sustained, and his conclusions of law set aside, the court was
right in. rendering judgment upon the findings; it was not
necessary to award a new trial. When a referee has made
a report, his powers and functions are ended as much as those
of a jury are when they have rendered their verdict and have
been discharged. *Conklin* v. *Morton*, 40 Ind. 76.

Section 350 of the code provides that the decision of the
referee may be reviewed in like manner, that is in like man-
ner as on a trial by the court; if there has been an exception to
the conclusions of law of the referee, that is reviewed like an
exception to the conclusions of law on a trial by the court,
but the review of the decision of the referee is made by the
court to which the referee reports. "Upon exceptions taken,
the court will review the decision of the referee, in like man-
ner and under the same regulations, as they would their own
proceedings." *Indiana, etc., R. W. Co.* v. *Bradley*, 7 Ind. 49..
*Ware* v. *Adams*, 12 Ind. 359; *Royal* v. *Baer*, 17 Ind. 332;
*Way* v. *Fravel*, 61 Ind. 162. Where there is error of the
referee in his findings of facts, then a new trial must be
awarded, but where the findings of facts are sustained, and
the error is in the conclusions of law, there is no reason for
trying the facts again, and the court ought to correct the de-
cision of the referee, by rendering a judgment according to
law, upon the facts as found by the referee. The provisions
of the New York code as to references are substantially the

same as ours; there was a reference " to hear and determine the issues," and the referee found the facts and reported them with his conclusions of law. It was held that where such a referee reports correct findings of fact, but erroneous conclusions of law thereon, the court, on the coming in of the report, is not required to send it back for correction, but may itself draw the proper legal conclusions from the facts. *Austin* v. *Ahearne,* 61 N. Y. 6.

The judgment of the court below was right.

PER CURIAM.—It is therefore ordered by the court, that the judgment of the court below be and it is hereby in all things affirmed, at the costs of the appellant.